Demurrer to answer sustained and judgment of ouster entered.

*J. C. Preston,* for relator.

*A. D. Follett,* for respondents.

---

## SPECIFIC PERFORMANCE OF CONDITIONS OF STREET RAILWAY GRANT.

[Circuit Court of Montgomery County.]

EDWIN P. MATTHEWS, CITY SOLICITOR, v. SOUTHERN OHIO TRACTION COMPANY.*

Decided, January Term, 1903.

*Street Railways—Specific Performance not the Proper Remedy—To Compel Company to Comply with Conditions of Franchise—Municipal Corporations.*

1. A decree of specific performance will not be granted by a court of equity, where, in order to make the performance effective, continuous supervision will be required over personal acts of faith and diligence, and an exercise of judgment in meeting and adjusting relations to new conditions as they arise.

2. It follows, therefore, that specific performance is not the proper remedy to compel an interurban railway company, which is operating an electric road under a municipal grant, to announce names of street crossings, to keep tickets for sale on its cars, to limit the speed of its cars, or "to run cars as often as public convenience and the business of the road will justify."

SULLIVAN, J.; WILSON, J., and SUMMERS, J., concur.

This case comes into this court on appeal. It is an action brought to compel the defendant to perform several of its obligations assumed by its predecessors, and provided for in the several ordinances of the city granting its predecessors a franchise over and upon the streets of the city named in the petition, to construct and operate a street railway.

The violation of the terms of said grant, as charged in the petition, are:

---

* Affirmed by the Supreme Court without report (70 Ohio State, 436).

First.  The conductors' failure to announce the names of the streets.

Second.  Failure to announce the crossings of other railroads.

Third.  Not keeping for sale tickets upon the cars.

Fourth.  Operating its cars at a rate of speed in excess of six miles an hour.

Fifth.  Failure to operate a sufficient number of cars necessary for the public convenience and demand.

The company by its answer admits the several ordinances containing the stipulations set forth in the petition, excepting that that relating to the number of cars to be operated is not correctly stated.

It avers it has no knowledge as to the failure of the conductors to announce the street crossings and railroad crossings, and therefore denies the same.  It claims the right to operate its cars at a speed of ten miles an hour, and if their motormen exceed this rate, they have no knowledge of it, and therefore deny this charge.  It avers that it was not aware of the provisions respecting the sale of tickets upon the cars, and, as soon as advised, they placed the same for sale upon the cars, and will continue to do so in the future.  They deny the charge of failing to operate a sufficient number of cars to answer the public convenience, and aver that it was not the understanding between the parties at the time the franchise was granted that the local travel was a consideration of such grant, and declare that the city has adequate remedies at law and a redress for the wrongs charged, and it is therefore not entitled to a decree of specific performance.

The reply of the city is a general denial of all the matters not admitted by the answer.

Testimony was taken upon the several issues, which shows that the rate of speed of the interurban cars at times was in excess of ten miles an hour; that occasionally conductors failed to announce crossings or stop at crossings for passengers to get on and off the cars; and in one instance when tickets were wanted on a car, they could not be furnished because the conductor had sold out.  The testimony relative to the operation of a sufficient number of cars to answer the public convenience would not be sufficient to justify a decree requiring more fre-

quent service, if it were within the power of the court to make such a decree.

It is not necessary, however, to discuss the evidence, in view of the conclusion we have reached.

The failure to announce or stop at crossings, or running at an excessive rate of speed, are made misdemeanors by the ordinances of the city, and any motorman or conductor violating these ordinances may be prosecuted and fined.

The ordinance providing for the sale of tickets on cars, provides that a demand for them is made by a passenger, and a failure by any conductor to supply them, for any reason, relieves the passenger from the payment of fare, and he can ride to his destination without paying fare.

In the matter of announcing crossings, rate of speed, and the keeping of tickets for sale upon the cars, a decree of specific performance would require a personal supervision and control of the employe upon whom the discharge of these same duties devolved.

The operating of a road from necessity requires the employment of subordinates to discharge these various duties. True, the officers of the company make the orders, but the execution from necessity rests upon these subordinates, and it would be their conduct the court would have to regulate and supervise, and not the officers; hence, the court would have to hear and determine every charge of any violation of the ordinances of the city, and the violation of the orders of the railway officials, a duty the court could not undertake.

In the case of *Port Clinton Ry. Co.* v. *Railway Co.*, 13 Ohio St., 544, 556, it is said:

"Even if the contract were sufficiently specific, so that the party, when ordered to operate the railroad, would know the manner and mode in which the order was to be obeyed, still the question of obedience to the order must necessarily be left open. And the question of obedience to such an order might come up for solution not once, * * * but in instances innumerable, and for an indefinite time."

Where a remedy by decree of specific performance requires the supervision of personal acts of faith and diligence in the performance of a personal duty or act, we think in such instance the remedy is invariably withheld.

In the matter of announcing crossings, and the rate of speed, a decree for specific performance would not be any more effectual in securing an observance of these matters than prosecutions under the ordinances making such violations misdemeanors.

The city also claims that the railroad company is violating the franchise granted to it by not operating a sufficient number of cars to answer the demands of the public; that all their cars are held in front of the company's station in the city, and the intervals between the cars is too great to be a convenience for the local travel. The stipulation respecting this obligation is to be found in the ordinance of June 11, 1869, and is as follows:

"Section 4. (Good cars to be placed on track and run). And provided further, that any company or individual to whom any privilege shall be granted to construct and operate street railways upon the streets and avenues of this city, shall place and continue upon said roads good cars for the convenience and comfort of the passengers, and that they run cars thereon as often as the public convenience and business of the road will justify."

This provision, as we consider it, means that as the public demand for the use of the road increases from time to time to a point where the company can, without loss to itself, operate a sufficient number of cars to meet such increase, it must do so. It would be against the interests of the public if the company was required to operate a service entailing loss and eventually bankruptcy. It was therefore contemplated, as shown in this stipulation, that the public convenience or demand, as it may be called, would increase, or conditions might arise that it would diminish, and hence the service was left to be fairly adjusted to meet such changes. How frequently such exigencies might arise would be beyond conjecture, and therefore necessarily uncertain, so that a decree fixing the number of cars to be operated would require the court to continue in the supervision of this part of the business, in order to meet changes that would occur in the future; and so on, so that the control over the road would have to be continuous, a condition that could not be tolerated. It is a rule that when in order to make a decree of specific performance effective it would require

continuous supervision over the personal conduct of the parties, and the exercise of judgment in order to properly meet and adjust relations to new conditions as they might arise in the future, a court of equity can not and will not extend the remedy.

The several obligations sought to be enforced in this case are clearly of this character. As the court say, in the case already referred to, instead of the final order being the end of the litigation, it would be itself a fruitful and continuous source; and that, too, not in the regular course of judicial proceedings, but irregularly, and simply on application, and such application to be made by either party, one when he considered there had not been a faithful compliance with the order, and the other when exemption from some provision might be claimed, on the ground of inability.

The complaints of the city relate to the interurban service, and not local service. The grant to the predecessors of the defendant was to operate a street railroad within the city, and not an interurban road. If the complaints of the city are true, it has a remedy, we think, but not the one sought in this proceeding, and therefore a decree of specific performance will be refused.

*E. P. Matthews,* for plaintiff.

*McMahon & McMahon,* for defendant.